Celeste COLON, et al., Plaintiffs,
Appellants,

v.

Jenaro Collazo COLLAZO, et al.,
Defendants, Appellees.

No. 83–1365.

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1983.

Decided March 8, 1984.

Manuel E. Moraza Choisne, Hato Rey, P.R., for plaintiffs, appellants.

Lourdes Del C. Rodriguez, Asst. Sol. Gen., Dept. of Justice, with whom Miguel Pagan, Acting Sol. Gen., and Reina Colon De Rodriguez, Asst. Sol. Gen., Dept. of Justice, San Juan, P.R., were on brief, for appellees.

Before COFFIN, Circuit Judge, ROSENN,* Senior Circuit Judge, and BREYER, Circuit Judge.

PER CURIAM.

On appeal, the plaintiffs, "non-delinquent" youths committed on a temporary basis to juvenile institutions against their will, claim that their commitment without a hearing or a court order deprives them of a liberty interest without due process of law in violation of the United States Constitution and circumvents the laws of Puerto Rico. After a consideration of the evidence adduced at trial and the briefs of the parties, the United States District Court for the District of Puerto Rico denied the plaintiffs' request for injunctive and declaratory relief and entered judgment for the defendants. We affirm.

The plaintiffs filed a civil rights action under 42 U.S.C. § 1983 (1976) for them-

---

* Of the Third Circuit, sitting by designation.

selves and as representatives of a class consisting of all non-delinquent juveniles committed to juvenile institutions throughout the Commonwealth of Puerto Rico without a hearing or court order. The district court certified the class, dividing it, however, into two sub-classes, only the first of which is pertinent to this appeal: juveniles committed without a hearing or a court order to juvenile institutions pursuant to a classification of juveniles with behavioral problems.

On appeal, the plaintiffs raise two issues: (1) Does the commitment without a hearing or a court order of juveniles described in the certified sub-class violate the due process and equal protection clauses of the United States Constitution, and (2) Does such a commitment violate the statute of the Commonwealth of Puerto Rico governing judicial proceedings concerning minors, P.R.Laws Ann. tit. 34, §§ 2001–2015 (1971 & Cum.Supp.1982). Both of these issues were raised in the district court and fully considered in an exhaustive opinion by the trial judge. We will therefore not engage in an extended discussion of the applicable principles of constitutional and statutory construction.

There appear to be two ways in which juveniles with problems are committed to institutions. The first is that if the Department of Social Services (the Department) deems a juvenile incorrigible or delinquent and in need of institutional care, it may use the adversarial process and obtain a court order after notice and hearing. *See* P.R. Laws Ann. tit. 34, §§ 2001–2015 (1971 & Cum.Supp.1982). The Department may then commit the juvenile to an institution without the parents' consent. The other method is utilized when the parents themselves request the commitment and the Department, after conducting a study of the child's problems, concurs.

The plaintiffs allege that the juvenile institutions where the sub-class is confined resemble detention-type institutions and that confinement there, even with parental consent, impinges on the juveniles' liberty interest. The commitment of the named representative, Ramon Negron Perez, to one of these institutions, Guaynabo State Home for Boys, pursuant to his classification as a juvenile with behavioral problems is typical of the Commonwealth's modus operandi. The district court found that the boy's behavioral problems were described as "defying parental and teacher authority, smoking marihuana, consuming alcoholic beverages, and truancy." The Department made a study of the boy's problems and obtained authorization for commitment from the juvenile's father.

When the commitment is with parental consent, the Department conducts its own investigation to determine "if the social condition of the minor's family justif[ies] his or her admission to any of said institutions." P.R.Laws Ann. tit. 8, § 56 (1976). The district court found that the investigation includes, inter alia, a study performed by a social worker and interviews "with the parents, the child, relatives, and other persons familiar with the child's situation, such as school teachers or neighbors." Typescript op. at 12. Once committed, a treatment plan is prepared by social workers and there is periodic review by an institutional panel consisting of social workers, psychologists, and supporting staff.

■ In analyzing the procedural due process required under the circumstances, the district court carefully and properly weighed the factors laid down in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), *quoted in Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 848–49, 97 S.Ct. 2094, 2112, 53 L.Ed.2d 14 (1977):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The district court acknowledged that a juvenile has a substantial liberty interest in remaining free from confinement or commitment without due process of law, and that confinement "sometimes produces adverse social consequences" because of the stigma society attaches to it. On the other hand, the district court considered the interests of parents in their child's welfare. It rejected the plaintiffs' argument that the traditional interests and responsibilities of parents must be subordinated to the paramount concerns of the child to be determined after a hearing and a court order. The court found that the record demonstrates that the parents in this case acted in the best interests of their children by voluntarily committing them to the state institution. It concluded that the parents are best able to make a determination as to their children's needs and that the Department's authorization comes only after it conducts an exhaustive investigation. The court therefore held, citing *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), that an investigation by the Department of the juvenile's condition and family background supported by the parents' consent provides sufficient constitutional protection to safeguard the child's rights in the commitment. We agree.

Although *Parham* dealt with the process constitutionally due a minor child whose parents or guardian seek institutional mental health care for the child, we believe that the rationale of that case is directly applicable to a situation where the parents request administered care in an open institutional setting on a temporary basis for a "non-delinquent" child suffering from behavioral problems. In both situations, court proceedings prior to commitment "pose a significant intrusion into the parent-child relationship." *Id.* at 610, 99 S.Ct. at 2508.

In *Parham*, the Court held that a state may commit a minor child to a mental institution on the recommendation of a "neutral factfinder" without a hearing or a court order if the state obtains the consent of the child's parents or legal guardian. The Court ruled that "the traditional presumption that the parents act in the best

interests of their child should apply." *Id.* at 604, 99 S.Ct. at 2505. To protect against the risks of error or hostility that may prompt the parents to act against the child's best interests, and to guard against wrongful parental assessment of their child's condition or needs, the Court required a "neutral factfinder" to determine whether the statutory and medical requirements for admission are satisfied. "Due process has never been thought to require that the neutral and detached trier of fact be law trained or a judicial or administrative officer." *Id.* at 607, 99 S.Ct. at 2506–07.

We believe that *Parham* is instructive and that those persons who conduct the social study required by the Department prior to commitment constitute the "neutral factfinder" to determine whether the requirements for admission are met. We therefore hold that the procedures applied by the Department protect a juvenile from a faulty admission decision in a manner that neither unduly burdens the state nor inhibits parents from seeking state assistance. We reject plaintiffs' claim that their federal constitutional rights have been violated.

■ The plaintiffs also contend on appeal that the commitment procedure utilized by the Department constituted a violation of the statute governing judicial proceedings concerning minors in the Commonwealth of Puerto Rico, P.R.Laws Ann. tit. 34 §§ 2001–2015 (1971 & Cum.Supp. 1982). They argue that Act No. 91 (codified at P.R. Laws Ann. Tit. 34, § 2002(1)(b) (Cum.Supp.1982) (Act No. 91, approved July 12, 1979) impliedly repealed the procedures under which the Department acted. They assert that under the procedures of Act No. 91 the Department is first required to provide community services for the child and, if these are inadequate, the Department then must certify the case to the Juvenile Court for a hearing before there can be any institutional commitment. The Department, on the other hand, contends that Act No. 91 is not applicable to cases

such as we now have before us where the parents have consented to a temporary commitment and a social study has been made by the Department concluding that the commitment is necessary.

The district court agreed with the Department's interpretation. It recognized that adversary procedures in every juvenile case would "significantly increase the trauma which accompanies an institutionalization of a minor and will further serve to stigmatize the recipient of the court's endorsement for the commitment." Typescript op. at 15. The court further noted that a requirement for an adversary type hearing in this sort of a case would adversely affect the state's interest for it would unnecessarily impose upon the state additional fiscal and administrative burdens. We see no error in the court's interpretation that the provisions of Act No. 91 are inapplicable to temporary juvenile commitments with the parents' consent and the Department's concurrence.

Affirmed.